Filed 5/19/16  In re Adrian D. CA2/5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re ADRIAN D., a Person Coming Under the Juvenile Court Law. | B266860 (Los Angeles County Super. Ct. No. CK97517) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. HUGO G., Defendant and Appellant, ANGEL R., Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Emma Castro, Commissioner.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Respondent Angel R.

No appearance for Plaintiff and Respondent.

───────────────────────────

Hugo G. (father) appeals from juvenile custody and visitation orders granting sole legal custody of his son, Adrian D., to Angel R. (mother), joint physical custody to both parents, and weekend visitation for father. The order was made after a status review hearing under Welfare and Institutions Code section 364.[1] Father contends the dependency court abused its discretion in granting sole legal custody to mother. Mother, as respondent,[2] contends order granting her sole physical custody of Adrian was within the court's discretion. We affirm.

───────────────────────────

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Counsel for the Los Angeles County Department of Children and Family Services notified this court that the Department would not be filing a respondent's brief. Mother filed a respondent's brief.

2

*January 2013 to February 2015*[4]

In early 2013, when Adrian was seven years old, the Los Angeles County Department of Children and Family Services (Department) began dependency proceedings with respect to Adrian and his two younger stepbrothers. [5]  Based on alleged domestic violence between mother and her then-husband, Aldo C., all three children were detained from parental custody and placed with Aldo C.'s parents.  On May 13, 2013, the court found the three children to be minors described by section 300, subdivision (b), sustaining an allegation of domestic violence between mother and Aldo C.  The court dismissed the remaining petition allegations, including allegations relating to domestic violence between mother and father.

Mother and father had separated when Adrian was two years old, and in February 2013, Adrian told a social worker he did not know who father was.  Father had a number of criminal convictions, and had not visited Adrian in the past year.  At disposition, the court found substantial risk of detriment[6] prevented placement with either parent, and

---

[3] "In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order."  (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.)

[4] The text of this section is a verbatim excerpt from our January 2016 unpublished opinion affirming the court's March 2015 orders granting physical custody of Adrian to mother and continuing jurisdiction.  (*In re Adrian D.* (January 14, 2016, B263298) [nonpub. opn.].)  Our inclusion of this excerpt does not signify that we consider the factual and procedural summary to be law of the case binding the dependency court's decision making.

[5] Adrian's stepbrothers are not party to this appeal, and the court has already terminated the portion of the dependency case involving them.

[6] Father appealed on June 11, 2013, and the Department cross-appealed.  Our opinion dated August 12, 2014, affirmed the court's orders, reasoning that father was

ordered monitored visits and reunification services for mother and father.

Father began visiting Adrian regularly during the next year, and by March 2014, he began having overnight weekend visits. Father completed parenting, domestic violence, and anger management classes. Mother was attending domestic violence and parenting classes and was on a waiting list for a psychological evaluation. At a March 21, 2014 six-month review hearing, the court placed Adrian in father's custody.

During the next reporting period, mother completed her domestic violence and parenting classes and was in substantial compliance with her individual counseling and mental health assessments. Father was compliant with court-ordered services, but had not substantially participated in conjoint therapy with Adrian as recommended by Adrian's therapist. Father first forgot to request a letter from the therapist, and later only attended two sessions of conjoint counseling, claiming his two jobs made it difficult to arrange conjoint counseling.

Adrian consistently indicated he missed mother and wanted to continue to have a relationship with her. Mother complained that father was not making Adrian available for visits. An October 2014 report noted that "[f]ather appears to be questioning his commitment to Adrian in light of his frustrations in dealing with mother." The same report quoted father as saying, "I want Adrian to live with me, but if I have to share 50% [*sic*] percent custody with [mother], I will have no choice and close[] the case." Father claimed to have heard that mother was prostituting herself, but would not identify the source of his information. Mother testified father would not return her phone calls, and her only way of communicating with him about visitation was through text messaging. Text messages reveal significant hostility and disrespect between mother and father.

By February 2015, Adrian was expressing a desire to live with mother. Mother was employed and living with maternal grandmother, and the Department had conducted a home inspection. The Department permitted mother to have unmonitored overnight

estopped from claiming the detriment finding was made in error because father's counsel prompted the court to make the finding.

4

visits on weekends beginning February 21, 2015, but due to problems in communication between mother and father, visits did not occur on the following two weekends. Nonetheless, the Department recommended that the court terminate jurisdiction, granting joint legal custody to mother and father, with father retaining primary legal custody.[7]

*March 2015 to August 2015*

At a review hearing in March 2015, the court awarded mother primary physical custody of Adrian during the week, with father to have weekend visits three times a month. The court continued jurisdiction, setting another hearing under section 364 for June 19, 2015, and emphasizing: "I strongly believe that Adrian's strongest bond with the two parents is with . . . mother, and that is because . . . mother had custody of Adrian for most of his life except for last year. . . . [¶] . . . [¶] I intend to only continue this order for 90 days." It found that placing Adrian with mother would not create a substantial risk of detriment, and described the factual basis for its finding as "child's close bond to his mother, the child's desire . . . to return to the custody of his mother, the mother's compliance with the case plan, and the mother's ongoing, unmonitored visitation with the child which has not demonstrated to the court any safety or health concerns for the child." The court ordered that father and mother both continue to receive family maintenance services. Father appealed, and on January 14, 2016, we affirmed the court's orders granting primary physical custody to mother and continuing jurisdiction over the case. (*In re Adrian D.* (January 14, 2016, B263298) [nonpub. opn.].)

In the meantime, the Department reported on June 19, 2015, that mother was in substantial compliance with the court-ordered case plan, and observed that Adrian was doing well in his mother's home. He was responsible, loving, and caring towards his mother, and was also independent and comfortable in his home environment and his new school. Adrian's visits with his father went well during the month of April, he had no

---

[7] This ends our excerpt from the January 14, 2016 unpublished opinion.

visits in May, and then an overnight visit on June 5, 2015. Mother claimed father was not returning her texts. The social worker tried to call father to discuss visitation, but father's phone had been disconnected. Counsel for all parties appeared in court on June 19, 2015, but neither father nor Adrian were present. The court continued the matter to July 23, 2015 for a mediation, and a hearing on the same day if the matter was not settled in mediation. The court ordered father's counsel to notify father of the new court date, and that the court would make orders in his absence if he did not appear.

On July 23, 2015, father did not appear for the mediation or the hearing. Mother sought sole legal custody of Adrian, but had no objection to continued visitation with father, so long as father confirmed the visits in advance. In response to questioning by the court, Adrian said the last time he had called his father was a few months earlier. He had stopped calling or leaving messages because he knew his father would not answer the phone. Father's attorney argued that it would be in the child's best interests to maintain joint legal and physical custody, and the Department also recommended joint physical and legal custody. After mentioning the importance of parents cooperating when they have joint legal custody and noting that father had failed to appear for mediation, the court made an order for joint physical custody, with primary physical custody to mother and visitation for father, but it also granted sole legal custody to mother. The final custody and visitation order was entered on August 7, 2015.

## DISCUSSION

Father contends the dependency court erroneously granted mother sole legal custody of Adrian. We find no abuse of discretion.

When the dependency court terminates jurisdiction, it has authority to make orders addressing custody and visitation. (§ 362.4; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122–1123.) We review those orders for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) Custody determinations are not disturbed in a dependency proceeding in the absence of an arbitrary, capricious, or patently absurd

6

exercise of discretion.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319; *In re Maya L.* (2014) 232 Cal.App.4th 81, 102.)  "It is not our function to weigh the credibility of the witnesses or resolve conflicts in the evidence.  [Citation.]  Rather we must indulge in all reasonable inferences to support the findings of the juvenile court and must review the record in the light most favorable to the juvenile court's orders."  (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.)  "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'  [Citations.]"  (*In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 318–319.)

The dependency court's custody and visitation orders focus on the child's best interests.  (*In re Chantal S.* (1996) 13 Cal.4th 196, 206; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)  On custody issues, while family law has a presumption favoring joint custody, the California Supreme Court has held that "application of a family-law-based joint custody presumption would be inconsistent with the purpose of juvenile court law."  (*In re Chantal S.*, *supra*, 13 Cal.4th at p. 206.)  Instead, the dependency court, "which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions."  (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712.)

Here there was substantial evidence supporting the court's decision to give mother sole legal custody of Adrian.  Father's argument emphasizes that Adrian had been living with him for a year, and was doing well during that time.  But because there is no presumption in favor of joint custody in dependency cases, those facts alone do not establish that the court's decision was an abuse of discretion.  The sole legal custody determination was supported by Adrian's closely bonded relationship with his mother, particularly when viewed in light of father's hostile attitude towards mother and his apparent unwillingness to communicate with her or participate in the dependency case.  Father has not demonstrated that the court's decision so exceeded the bounds of reason as

to constitute an abuse of discretion. (*In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 318–319.)

## DISPOSITION

The custody and visitation orders are affirmed.


KRIEGLER, J.


We concur:


TURNER, P. J.


BAKER, J